97 Pa. Commonwealth Ct. 219 (1986)
509 A.2d 1346
Metropolitan Property & Liability Insurance Company, Petitioner
v.
Commonwealth of Pennsylvania, Insurance Commissioner, and Bonnie Beck, Respondents.
No. 1448 C.D. 1985.
Commonwealth Court of Pennsylvania.
May 13, 1986.
Argued February 5, 1986.
*220 Before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, DOYLE, BARRY, COLINS and PALLADINO.
Harvey Bartle, III, Dechert, Price & Rhoads, for petitioner.
Samuel R. Marshall, Assistant Counsel, with him, Hanna Leavitt, Chief of Litigation, and Paul Laskow, Chief Counsel, for respondent, Insurance Commissioner.
Beth Sheligo, with her, Heidi B. Hamman, for respondent, Bonnie Beck.
*221 OPINION BY JUDGE COLINS, May 13, 1986:
Metropolitan Property & Liability Insurance Company (petitioner) has petitioned this Court for review of an order and adjudication of the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner), which directed that the petitioner reinstate an automobile insurance policy of one Bonnie Beck (Beck) until such time as the policy is terminated in accordance with that Act commonly known as Act 78 (Act).[1]
Beck applied to the petitioner for automobile insurance on August 1, 1983. There is no dispute that Beck fraudulently answered various questions on the application concerning her past driving record. While she asserted that her driving record was flawless, she had in fact committed several violations, including a speeding violation for which she was fined and her license suspended. This misrepresentation by Beck was undisputedly material to the risk, and she would not have been provided coverage had her record been known. Petitioner discovered Beck's misrepresentation after investigation of her first claim on August 7, 1983, for $878.00 of property damage caused by alleged vandalism. Petitioner refused to pay on the claim, and on September 16, 1983, informed Beck that it was rescinding her insurance contract due to her material misrepresentation, and returned her premium payment.
Beck filed a request for review with the Commissioner pursuant to Section 8 of the Act, 40 P.S. §1008.8. The matter was reviewed by the Insurance Department, and on March 1, 1984, the Department issued a determination finding that petitioner had violated Sections 5, 6(3), and 8(b) of the Act, 40 P.S. §§1008.5, *222 1008.6(3), and 1008.8(b). Petitioner then requested a formal administrative hearing as provided for by Section 9 of the Act, 40 P.S. §1008.9. A hearing was held, and on May 23, 1985, the Commissioner upheld the Department's determination. This Petition for Review followed.
The decision of the Commissioner was based on his conclusion that the Act superseded all common law rights and methods of terminating insurance contracts, and that the only means by which an insurance contract could be terminated were contained in the provisions of the Act. Because the Act contains no provisions allowing for rescission of an insurance policy, the Commissioner concluded that the petitioner had violated the Act by improperly terminating Beck's insurance policy, and he therefore ordered reinstatement of the policy until such time as it was terminated in accordance with the Act. The sole issue before this Court is whether the Act superseded all methods of termination of automobile insurance not contained within the Act.
Initially, we must note that there is no language in the Act itself or any of its amendments which explicitly states that the Act was meant to supersede any common law or previous statutory methods of termination. When the words of a statute are not explicit, this Court must ascertain and effectuate the intention of the General Assembly. Higher Education Assistance Agency v. Abington Memorial Hospital, 478 Pa. 514, 387 A.2d 440 (1978); Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(a). In order to ascertain this intent, the Court may consider, among other matters:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.

*223 (4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa. C. S. §1921(c).
Rescission of a contract and cancellation of a contract are two separate and distinct legal concepts. A rescission amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief. Cancellation is an act destroying the force and effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other. The General Assembly is cognizant of the difference between these legal concepts. An examination of §105(b) of the Pennsylvania No-Fault Motor Vehicle Insurance Act,[2] an Act contemporaneous with this action, reveals the following language:
Cancellation, refusal to renew and other termination of [automobile] insurance shall be provided for in accordance with the provisions of the Act of June 5, 1968 (P.L. 140, No. 78), entitled `an act regulating the writing, cancellation of or refusal to renew policies of automobile insurance; and imposing powers and duties on the Insurance Commissioner therefor.' *224 (Emphasis added.) If cancellation and rescission were synonymous, or if the term cancellation included rescission among its definitions, the language "other termination of insurance" would be surplusage. Therefore, cancellation and rescission are distinct terms. The language of the No-Fault Act indicates that Act 78 was to govern all methods of termination of automobile insurance, including cancellation, refusal to renew, and others. Rescission is indisputably another method of terminating a contract for automobile insurance, and we therefore affirm the Department's conclusion that rescission falls within the penumbra of Act 78.
An analysis of the Act itself confirms this conclusion. Section 4 of the Act, 40 P.S. §1008.4, permits an insurer to cancel a policy when it is determined that "the insured has concealed a material fact, or has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by the insurer." Had the General Assembly also wanted to provide a remedy in rescission, they surely would have so done. An additional remedy will not be fabricated from a statute when the legislature has clearly expressed its intent. Commonwealth v. Aljia Dumas Private Detective Agency, Inc., 246 Pa. Superior Ct. 140, 369 A.2d 850 (1977). The General Assembly's intent was clearly to provide a remedy for misrepresentation by cancellation rather than by some other method.
Furthermore, the Act is finely detailed as to the reasons for which an insurer may terminate an insurance policy, and how to terminate a policy. Section 3 of the Act, 40 P.S. §1008.3, details what grounds are insufficient to justify termination of an insurance policy. Section 4 of the Act, 40 P.S. §1008.4, details the grounds which are sufficient for termination. Section 5 *225 of the Act, 40 P.S. §1008.5, specifies the notice necessary in order to terminate an automobile insurance policy. Most telling, Section 6 of the Act, 40 P.S. §1008.6, specifies when the Act shall not apply. It seems likely that had the General Assembly intended to exempt rescission from this Act's application, it would have been enumerated within this section. When the Act is considered as a whole, it is clear that the General Assembly intended to create a complete and comprehensive scheme to govern termination of automobile insurance. Such a comprehensive scheme indicates a legislative intent that the Act should totally supersede and replace the common law dealing with the subject matter.
Furthermore, Section 1922(5) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922(5), clearly provides that the General Assembly intends to favor the public interest rather than a private interest, which, when dealing with insurance matters, requires that we favor extending coverage to the insured. Motley v. State Farm Mutual Insurance Company, 502 Pa. 335, 466 A.2d 609 (1983). If rescission occurs, this intent to extend coverage would be frustrated. An insured would be uncertain if he had coverage, since an accident could lead to rescission. More importantly, a third party would be uncertain if other drivers had insurance, as an accident could lead to rescission, thus frustrating the General Assembly's intent that all drivers be insured. See Motor Vehicle Financial Responsibility Law, as amended, 75 Pa. C.S. §1701-1798. In addition, the Act details the rights and relief available to an insured who believes his policy was improperly terminated. An insured may seek a review of his insurance decision by the Insurance Department, and also a formal administrative hearing before the Commissioner. The Act provides that during the period of the Department's review *226 and any subsequent hearing, the insured's policy shall remain in effect. 40 P.S. §1008.9(e). If rescission occurs, the Insurance Department clearly has no authority to hear appeals from an insured under the Act. Therefore, the insured would have to seek redress in court. It would indeed be incongruous, and certainly not in the best interests of the public, if an insured could be forced into the most convenient forum for the insurer simply by the insurer choosing to rescind or to cancel.
The intent of the General Assembly was to supersede all common law rights and remedies by this Act; therefore, the insurer can only terminate an automobile insurance policy by the means provided under this Act.
The petitioner further asserts that even if the Act governs termination by rescission, Section 6 of the Act, 40 P.S. §1008.6, affords it relief. Section 6 of the Act, provides, in pertinent part:
Nothing in this act shall apply:
. . . .
(3) To any policy of automobile insurance which has been in effect less than sixty days, unless it is a renewal policy, except that no insurer shall decline to continue in force such a policy of automobile insurance on the basis of the grounds set forth in subsection (a) of section 3 hereof and except that if an insurer cancels a policy of automobile insurance in the first sixty days, the insurer shall supply the insured with a written statement of the reason for cancellation. [footnote omitted].
This section does not specifically authorize any methods of termination other than those methods provided for by the Act. It only specifies how an insurer may terminate an automobile insurance policy during the first sixty days. The termination must still be in accordance with *227 the Act, except as provided by Section 6. Therefore, the petitioner's argument in this regard must fail.
For the aforementioned reasons, we therefore affirm the adjudication and order of the Insurance Commissioner.

ORDER
AND NOW, May 13, 1986, the Order and adjudication of the Insurance Commissioner, No. P84-5-2, dated May 23, 1985, is affirmed.
DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:
I respectfully dissent from the majority's conclusion that the Act prevents rescission of Beck's policy. This policy was in effect less than sixty days before rescission. Section 6(3) of the Act provides that "nothing in this act shall apply . . . to any policy of automobile insurance which has been in effect less than sixty days. . . ." (Emphasis added.) Although it also sets forth specific limitations on refusing to continue[1] and requirements for canceling[2] such policies, neither of which are applicable here, Section 6(3) does not revive the rest of the Act regarding even these methods of policy termination. Therefore, petitioner's conceded common law right to rescind ab initio Beck's fraudulently procured policy[3] is not superseded by the Act.
Judge DOYLE joins in this dissent.
NOTES
[1] An Act regulating the writing, cancellation of or refusal to renew policies of automobile insurance; and imposing powers and duties on the Insurance Commissioner therefor, Act of June 5, 1968, P.L. 140, as amended, 40 P.S. §§1008.1-1008.11.
[2] Act of July 19, 1974, P.L. 489, formerly 40 P.S. §1009.105(b), repealed by the Act of February 12, 1984, P.L. 26.
[1] An insurer may not decline to continue in force an automobile insurance policy in effect less than sixty days on the basis of the grounds set forth in Section 3(a) of the Act, 40 P.S. §1008.3(a) (such as Age, Race or Creed).
[2] If an insurer cancels an automobile insurance policy in the first sixty days, it must give the insured a written statement of reasons.
[3] See Shafer v. John Hancock Mutual Life Insurance Co., 410 Pa. 394, 189 A.2d 234 (1963).