**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, Appellant,**

v.

**INSURANCE COMMISSIONER OF the COMMONWEALTH OF PENNSYLVANIA and Bonnie Beck, Appellees.**

**STATE FARM FIRE AND CASUALTY COMPANY, Appellant,**

v.

**INSURANCE COMMISSIONER OF the COMMONWEALTH OF PENNSYLVANIA, Appellee.**

Supreme Court of Pennsylvania.

Argued April 7, 1987.

Decided Dec. 30, 1987.

Concurring Opinion Jan. 22, 1988.

Harvey Bartle, III, Philadelphia, Robert E. Kelly, Jr., Harrisburg, for appellant.

David M. McCormick, Philadelphia, for amicus—Ins. Fed. of Pa.

Hannah Leavitt, Chief Counsel, Regina L. Matz, Asst. Counsel, Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

McDERMOTT, Justice.

These cases were consolidated in order to address a common issue, to wit: whether an insurance company may rescind an automobile insurance policy upon learning that

the application for insurance contained material misrepresentations. The germane facts of these cases are set out below.

## No. 120 E.D. Appeal Docket 1986

On August 1, 1983, Bonnie Beck applied to Metropolitan Property and Liability Insurance Company for automobile insurance coverage. In response to questions regarding her prior driving history Ms. Beck indicated that she had no moving traffic violations, and that she had never had her license suspended or revoked. Ms. Beck tendered a $170.00 premium payment to the Metropolitan agent. The payment was accepted, and a binder was executed immediately extending coverage to Ms. Beck. Less than a week later, on August 7, 1983, Ms. Beck submitted a claim under her new policy to Metropolitan. The claim was for property damage caused by vandalism and was in the amount of $878.00.

While Ms. Beck's claim was being reviewed Metropolitan was also reviewing her application. As part of this latter process the company requested and received a motor vehicle report from the Pennsylvania Department of Transportation. That report indicated that Ms. Beck had misrepresented her driving record.[1] Consequently, on September 16, 1983, Metropolitan informed Ms. Beck that due to the misrepresentations in her application her insurance policy was rescinded. At that time Metropolitan returned to Ms. Beck the $170.00 premium it had received.

Ms. Beck thereupon reported the rescission to the Pennsylvania Insurance Department, which in turn determined that Metropolitan's actions violated the termination procedures provided in the automobile insurance act known as

1. Ms. Beck had answered "no" to the following questions:
   During the past five years has the applicant
   A. had license to drive or registration suspended, revoked, or refused

   . . . . .

   C. been convicted (or forfeited bail) for traffic violations?
   However, her motor vehicle report indicated that in June, 1981 she had been convicted of speeding, that her license had been suspended, and that in November, 1982, she was fined for driving without a valid license.

Act 78,[2] 40 P.S. § 1008.1 *et seq.* Metropolitan sought review of this decision before the Commonwealth Court. However, that court affirmed in a five to two *en banc* decision, Crumlish, P.J., and Doyle, J., dissenting, 97 Pa. Cmwlth. 219, 509 A.2d 1346. Metropolitan then sought allowance of appeal, which was granted.

No. 46 M.D. Appeal Docket 1986

On December 9, 1983, Darryl Jones applied to State Farm Fire and Casualty Company for automobile insurance coverage. In response to questions regarding his prior driving history, Mr. Jones indicated that he had no previous accidents or moving traffic violations. Mr. Jones tendered a $500.00 premium payment to the State Farm agent. The payment was accepted, and a binder was executed immediately extending coverage to Mr. Jones. The next day, December 10, 1983, Mr. Jones' car was missing. On December 12, 1983, Mr. Jones submitted a claim for coverage based on the theft of his car and its contents. Two days later, on December 14, 1983, the car was recovered, but Mr. Jones claimed that substantial damage had been done to the car, and that a leather jacket had been stolen from the car. He claimed $3363.86 in damages for repairs and replacement value for the jacket, and $480.00 for a rental car during the time his car was being repaired.

While Mr. Jones' claim was being reviewed State Farm was also reviewing his application. As part of this latter process State Farm requested and received a motor vehicle report from the Pennsylvania Department of Transportation. That report indicated that Mr. Jones had misrepresented his driving record.[3] Consequently, on February 1, 1984, State Farm informed Mr. Jones that due to the misrepresentations in his application his insurance policy was rescinded.

**2.** Act of June 5, 1968. P.L. 140, No. 78 § 1 *et seq.*

**3.** Mr. Jones had answered "no" to the following questions:
—How many moving violations in the last five years?
—Any revoked or suspended drivers license?
However, his motor vehicle report indicated that in the three years prior to applying for this insurance his license had been suspended on five different occasions, and he had one speeding violation.

At that time State Farm returned to Mr. Jones the $500.00 premium it had received.

Mr. Jones thereupon reported the rescission to the Pennsylvania Insurance Department, which in turn determined that State Farm's actions violated the termination procedures provided in Act 78, 40 P.S. § 1008.1 *et seq.* State Farm sought review of this decision before the Commonwealth Court. However, that court affirmed in a two to one decision, Crumlish, P.J. dissenting. State Farm then sought allowance of appeal, which was granted.

The threshold issue in this case is whether the termination procedures of Act 78 are the exclusive means by which a Pennsylvania insurance company can sever its ties to an insured party.

In Pennsylvania the General Assembly has deemed it necessary to control the sale of automobile insurance. Consequently, Act 78 was enacted to regulate the conduct of automobile insurers *vis a vis* their present and prospective policy holders. The extent of the statutory regulation ranges from restricting insurers' ability to pick and choose their customers,[4] to defining the procedures by which an insurer may terminate coverage.[5] Appellants acknowledge that Act 78 was intended to regulate their conduct with their policy holders. However, they basically contend that the Act was only intended to apply to those situations that it specifically addressed, and that it was not intended to supplant common law contract remedies about which it is silent, such as rescission.

Although the Act is silent about supplanting rescission, the question remains as to whether the General Assembly, by enacting a comprehensive scheme regulating the insurance relationship, intended to preempt previously existing rules governing that same relationship; and since the statute in this instance does not explicitly resolve the issue it is our duty to ascertain and effectuate the intention

4. 40 P.S. § 1008.3.
5. 40 P.S. § 1008.5.

of the General Assembly. *See Commonwealth v. Fisher*, 485 Pa. 8, 400 A.2d 1284 (1979).

Whenever we are called upon to interpret a statute, our analysis must begin with the Statutory Construction Act.[6] Section 1921(c) of that Act provides:

. . . . .

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.S.C. § 1921(c).

We will, therefore, evaluate this Act in light of these considerations.

First, it is fairly obvious why Act 78 was passed and the "mischief" it sought to remedy. The reason for its enactment was to effect a change in the disparate bargaining positions between insurance companies and individuals, and to govern the contractual relationship between the parties.

Appellants contend that this control was only to extend to those contracts which were not by virtue of misrepresentation subject to rescission. In response to this argument it is significant to note that Act 78 was amended in 1978 to include, among other things, material misrepresentation as a basis for cancellation of a policy. At the time of the events in question section 4 of Act 78 provided:

6. Act of Dec. 6, P.L. 1339, No. 290, § 3.

No insurer shall cancel a policy except for one or more of the following specified reasons:

(1) Nonpayment of premium;

(2) The driver's license or motor vehicle registration of the named insured has been under suspension or revocation during the policy period; the applicability of this reason to one who either is a resident in the same household or who customarily operates an automobile insured under the policy shall be proper reason for the insurer thereafter excluding such individual from coverage under the policy, but not for cancelling the policy; or

(3) A determination that the insured has concealed a material fact, or has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by the insurer.

40 P.S. § 1008.4.

Prior to 1978, material misrepresentation was not defined as grounds for termination, and in the case of *Safeguard Mutual Insurance Co. v. Huggins*, 241 Pa.Super. 382, 361 A.2d 711 (1976), the Superior Court did permit an insurer to pursue an action to rescind an automobile policy since no other avenue was open to the insurer. However, in apparent response to that decision, the General Assembly amended Act 78 with the intent of "further defining the grounds for termination of coverage; and ... further defining the powers of the Insurance Commissioner." Preamble to Act 78, Legislative Journal—House, page 1971 (1977). This amendment offers persuasive evidence of the legislative intent to bring within the confines of Act 78 the problem of recission.

■ In further pursuit of legislative intent we must examine the consequences of accepting appellants' position; and we are constrained to conclude that if appellants' position were accepted it would seriously undercut the applicability of Act 78, and particularly in cases of misrepresentation, amended section 4. This is so because we believe that

insurers, when faced with information which contradicted an insured's revelations, would almost always opt to rescind the contract, which under the insurers' proposal can be done unilaterally, rather than follow the statutorily dictated termination procedures. The consequences of such an action would be to require an insured to proceed to common pleas court to contest this action. In the meantime the individual would be without insurance, and without any decision as to whether his insurance was rightfully or wrongfully terminated. The result would be that this individual would have been effectively denied his driving privileges without any immediate recourse.[7]

In addition, to allow insurers to unilaterally elect to rescind policies leaves open the possibility of unscrupulous insurers holding the threat of rescission over the head of claimants in an attempt to bargain down claims.

Finally, and perhaps most importantly, we believe that in passing Act 78 the legislature intended that insurance questions were intended to be primarily resolved under the auspices of the Insurance Commissioner: a scheme which has the advantages of providing for expeditious resolution of claims before a body which has particular expertise, as well as eliminating from the dockets of the trial courts a host of relatively minor cases, which could be time consuming and expensive to the individual litigants. Appellants' position would certainly frustrate this judicial economy rationale by allowing the insurer an option to pick its forum, and thereby divest the Insurance Commissioner of his jurisdiction.

■ We also think that the appellants' argument is similarly unsupportable for other reasons. The Statutory Construction Act provides us with certain presumptions in ascertaining legislative intent. *See* 1 Pa.C.S. § 1922. Among them is the rule that "[t]he General Assembly

---

7. Under the current law a driver whose insurance has been rescinded would not be permitted to drive without establishing his "financial responsibility." *See* 75 Pa.C.S. § 1782. Act of Feb. 12, 1984, P.L. 26 No. 11, § 3, as amended Feb. 12, 1984, P.L. 53 No. 12, § 3.

intends [an] entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Appellant's position in this case would fly in the face of that presumption because it would throw open to uncertainty part of the contractual relationship which it was the legislature's intent to control, i.e., the ability of an insurer to terminate a policy.

Appellants have also argued in this case that a decision in favor of the appellees effectively punishes them and rewards dishonesty. This is certainly not our intent, and appellants' argument ignores the fact that they are merely the victims of their own haste. There is no requirement in Act 78, or anywhere else, that an insurer must accept an applicants' answers at face value and offer immediate coverage. The law provides insurers with an opportunity to verify information before extending coverage. However, as a marketing tool some insurers, such as appellants, have opted to make immediate coverage available to their customers based on nothing more than up-front money and the customer's representations. The insurers are now seeking our protection from such business practices by claiming that they should not be the victims of their own blind faith. We see no strong social policy dictating such protection. In fact there is at least one strong social policy operating against the court's assuming such a position, and that is that we would be effectively discouraging insurers' from verifying their applicants' representations, since such information would only become relevant when a claim was filed at which time any inconsistencies would be a basis for an attempted rescission. Obviously, this would only engender havoc in an area where the General Assembly specifically sought to avoid it.

Appellants further argue that absent the threat of rescission there is no disincentive to prevent an unscrupulous citizenry from lying on applications. However, as appellants themselves admit, the General Assembly has categorized as a misdemeanor the false procurement of insurance, 40 P.S. § 474.[8]

8. Section 474 provides:

Consequently, appellants have it well within their power to halt the chaos which they fear. Firstly, insurers can at any time stop the practice of extending immediate coverage.[9] Secondly, insurers can begin to vigorously press for prosecutions in those cases where applicants' conduct fit the statutory proscription. In either case, insurers can accomplish their ends without dismantling the structure which the General Assembly has carefully crafted to govern this area. In addition, an insurer would seem to have a tort action for fraud against an insured for the damages the company incurred due to the misrepresentations.

> § 474. Fraud in procuring insurance or in collecting claims; penalty
>
> (a) Any person who is knowingly concerned in, or who, for profit, gain, benefit, favor, or otherwise, makes any false oral statement, misrepresents, substitutes persons or realty or goods, subscribes to or prepares, or helps to prepare, any fraudulent letter, document, application, affidavit, inventory, financial or other statement, or in any method or manner attempts to deceive, for the purpose of obtaining for himself, herself, or others, any of the classes of insurance provided for by this act; and (b) any person knowingly concerned for profit, gain, benefit, favor, or otherwise, in preparing or forwarding any fraudulent application, affidavit, proof of loss, or claim, or attempting to collect or collecting any wholly or partly fraudulent claim or money demand from any insurance company, association, or exchange, lawfully transacting business within this Commonwealth, whether any policy or agreement of insurance was lawfully procured or procured by fraud,— shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to undergo imprisonment for not more than one year or less than six months, and, in addition, to pay a fine not exceeding five hundred dollars ($500) or less than one hundred dollars ($100). The provisions of this section shall apply whether or not insurance was actually in force and whether or not the offending person or persons received profit, gain, benefit, or favor from the attempt to defraud or from the consummation of the fraud.
>
> Act of May 17, 1921, P.L. 682, art. III, § 349.

9. Appellants argue that offering on the spot coverage is a great boon to the consuming public, and argue that without this practice applicants will be forced to wait weeks or even months for insurance coverage. However, this latter contention is belied by the record. In this matter one of appellant's own witnesses testified that the information which was at issue here, i.e. driving records, was retrievable within 24 hours.

Therefore, we conclude that the General Assembly intended that in order to terminate a policy of automobile insurance an insurer must comply with Act 78.

Our inquiry, however, is not at an end. In addition to this argument addressed above, appellants have argued that even if Act 78 provides the exclusive means of termination, the Act doesn't apply under the facts of this case, and therefore rescission is still available to them.

■ This latter argument is based on subsection 3 of section 6 of the Act, which provides

Nothing in this Act shall apply . . .

(3) To any policy of automobile insurance which has been in effect less than sixty days, unless it is a renewal policy, except that no insurer shall decline to continue in force such a policy of automobile insurance on the basis of the grounds set forth in subsection (a) of section 3 hereof and *except that if an insurer cancels a policy of automobile insurance in the first sixty days, the insurer shall supply the insured with a written statement of the reason for cancellation.*

40 P.S. § 1008.6(3) (emphasis added). On the surface appellants' argument appears to have some merit. However, upon closer inspection we cannot accept it.

It is important to emphasize that this section originally appeared in Act 78 in the following form:

Nothing in this Act shall apply . . .

(3) To any policy of automobile insurance which has been in efffect less than sixty days, unless it is a renewal policy, except that no insurer shall decline to continue in force such a policy of automobile insurance solely on the basis of the grounds set forth in section 3 hereof.

When the 1978 amendments were added subsection 3 of section 6 was amended to include the exception language emphasized above. This exception was provided in the same enactment which brought misrepresentation under the auspices of the Act.

■   It is appellants' argument that the sixty day period referred to in subsection 3 is a grace period during which the old rules of contract law apply. However, this argument ignores the explicit language of the exception which clearly indicates the legislative intent to govern the termination of policies even during the sixty day period. Although that language prescribes only minimal procedures to be followed, it nevertheless clearly prescribes what an insurer *must* do.[10]

We agree with appellants that subsection 3 of section 6 was intended to more expeditiously free insurers from obligations which upon closer inspection they would not have incurred; and in that vein the legislature will permit insurers to end coverage without providing a remedy to the customer, and without going through the procedural steps set forth in section 3, 40 P.S. §§ 1008.5. However, there is nothing in this section which implies that the legislature intended this period to be completely free from control. Indeed the legislative prescription for cancelling a policy, brief though it may be, calls for a directly contrary result.

Finally, the same policy concerns expressed earlier in this opinion apply during this sixty day period as well: i.e. limiting access to the court; providing an expert and expeditious forum; removing opportunities for unscrupulous insurers to bargain down claims by threats of rescission; and

**10.**  Appellants here have argued that this section only requires them to send notice to the cancelled insured after they (the insurers) have elected to cancel the policy. Such a disengenuous argument flies in the face of the statutory prescription that "the General Assembly does not intend a result that is absurd." 1 Pa.C.S. § 1922.

Under appellant's interpretation an insurer may cancel a policy unilaterally, and *then* tell the customer. The customer then could very well find himself in a position of driving without insurance, a clear violation of the Financial Responsibility Law, and he would not even be aware of this fact. In addition, he would unknowingly put at risk himself and all other persons on the highway. This section, in order to be effective, must be construed as requiring *prior notice* before a cancellation can occur. It cannot be interpreted otherwise and meet standards of fairness and due process (an insured cannot be made subject to a criminal prosecution by a third party when he had no prior notice and no ability to know he was committing a crime).

encouraging insurers to perform better and more efficient investigations prior to obligating themselves.

Therefore, for the above stated reasons, we agree with the decisions of the Commonwealth Court and the Insurance Commissioner.

The order of the Commonwealth Court is affirmed.

ZAPPALA, J., joins in this opinion.

NIX, C.J., files a concurring opinion in which FLAHERTY and PAPADAKOS, JJ., join.

LARSEN, J., concurs in the result.

HUTCHINSON, Former J., did not participate in the decision of this case.

NIX, Chief Justice, concurring.

While I agree that the insurers under the facts of the cases before us cannot establish a valid claim for rescission of the policies in question, I cannot accept the sweeping holding in the Opinion Announcing the Judgment of the Court that the passage of Act 78, 40 P.S. § 1008.1 *et seq.* (Supp.1987),[1] expresses a legislative intent to foreclose an action for rescission of a policy in an appropriate case.

The Act in question related solely to cancellation, refusal to write or to renew a policy for automobile insurance. Section 4 of Act 78, 40 P.S. § 1008.4, provides the grounds for which the cancellation may be granted. Section 5, 40 P.S. § 1008.5, provides the procedure to be followed before that cancellation becomes effective. Under the terms of the Act, the policy remains in effect until the insurer "shall deliver or mail, to the named insured ..." such notice of cancellation. 40 P.S. § 1008.5. Although section 4 provides for cancellation upon a showing of a misrepresentation, "material to the acceptance of the risk by the insurer", 40 P.S. § 1008.4, this right would not defeat a claim of loss arising between the issuance of the policy and the effectuation of the cancellation of that policy as required by section

1. Act of June 5, 1968. P.L. 140, No. 78 § 1 *et seq.*, as amended.

5 of the Act. Thus the Act makes no provision for the rejection of a claim where the policy was in fact obtained through the material misrepresentation between the issuance of that fraudulently secured policy and the effectuation of the cancellation of that policy.

The premise of the Opinion Annoucing the Judgment of the Court is that, since the Act does not expressly provide for a right of rescission, we must infer a legislative intention to abrogate the well recognized right to rescind, *ab initio*, a fraudulently procured policy. *See Safeguard Mutual Insurance Co. v. Huggins*, 241 Pa.Super. 382, 361 A.2d 711 (1976). This result was reached in the Opinion Announcing Judgment even though it is there conceded that the false procurement of the policy may well amount to a criminal act. 40 P.S. § 474. To ascribe this intent to the legislature is to attribute to them an absurd result, 1 Pa.C.S. § 1922. In my view the fact that the legislature decided to provide a procedure for cancellation or refusal to renew policies and placed these matters under the auspices of the insurance commissioner does not warrant the inference of the elimination of the well recognized contract remedy of rescission where a fraud has occurred.[2]

The Opinion Announcing Judgment attempts to justify this result by characterizing as a "marketing tool" the practice of immediate coverage before the insurer has had an opportunity to thoroughly check the accuracy of the representation made in the application. This disparagement ignores the fact that the major purpose of the automobile insurance laws was to support the policy of this Commonwealth that drivers of motor vehicles should be financially responsible for injury or damage they may cause upon our highways. *See* Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701 *et seq.* If thorough verification must be

2. The implicit premise of the Opinion Announcing the Judgment of the Court is that the statutory remedy supersedes and eliminates all prior common law remedies. However, the suggestion that a common law tort action for fraud based upon the misrepresentation may still be a viable action, see maj. op. at 228–229, seems inconsistent with this principle.

made to assure the veracity of the responses before coverage is afforded, to guard against the relatively small number of cases where there may be a deliberate attempt to deceive, such an approach would serve to undermine that policy rather than support it.

I concur in the result because the misrepresentations in the two cases before us were not material to the loss that was claimed. Property damage by vandalism or theft of a vehicle and its contents has no relationship to the drivers' misstatements as to their prior driving records. While these complaints may well have justified a cancellation of the policy, if the provisions of the Act had been properly followed, there was no basis for a rescission to avoid coverage for alleged misstatements which were in no way material to the loss sustained.[3]

FLAHERTY and PAPADAKOS, JJ., join in this opinion.

---

**3.** The views expressed in this opinion would not absolve the insurer from the responsibility of promptly reviewing the veracity of statements contained in an application for insurance and of seeking to rescind the insurance contract timely once discovery of the material misrepresentation is made. *See, e.g., Fichera v. Gording,* 424 Pa. 404, 227 A.2d 642 (1967). The instant complaint is directed at the total abrogation of the remedy of rescission in this area.