537 A.2d 53

Metropolitan Property & Liability Insurance Company, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department and Edgar Miller, Respondents.

Argued September 15, 1987, before Judges BARRY and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Harvey Bartle, III, Dechert, Price & Rhoads,* for petitioner.

*Arthur Selikoff,* Assistant Counsel, with him, *Linda J. Wells,* Chief of Litigation, and *M. Hannah Leavitt,* Chief Counsel, for respondents.

OPINION BY JUDGE COLINS, January 28, 1988:

Metropolitan Property & Liability Insurance Company (Metropolitan) petitions for review of an order of the Insurance Commissioner (Commissioner) which found Metropolitan's rescission of the homeowners insurance policy of Edgar Miller (Miller) to be in violation of Section 5(a)(9) of the Unfair Insurance Practices Act (Act or Act 205),[1] and ordered the reinstatement of Miller's homeowners policy.

In October of 1984, Miller contacted a sales agent at Metropolitan about obtaining a homeowners insurance policy. A meeting was held with the agent at Miller's home in Ruffsdale, Pennsylvania, and on November 26, 1984, Miller visited Metropolitan's offices and completed an application for homeowners insurance. This application was completed by the agent based upon information supplied by Miller. In completing the application, the agent inquired if Miller had had any losses during the past five (5) years and if so, the loss date, time and amount. Miller advised the agent that he had not had any losses in the past five years and the application was so marked. Thereafter, Miller signed the completed application indicating that the statements contained thereon were correct and paid Metropolitan a premium of $438.00 for the policy.

On December 5, 1984, Metropolitan, in accordance with established procedures, made a "spot check" call to Miller to verify the information contained on the application concerning prior losses. Miller indicated that he had suffered a fire loss of $2000.00 when a shed on his Ruffsdale property burned down. Accordingly, Metropolitan changed the response on the application regarding losses from "no" to "yes" and listed the loss date,

---

[1] Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §1171.5(a)(9).

type and amount. Under Metropolitan's underwriting rules, the loss described by Miller was not material to Metropolitan's acceptance of the risk insured. Miller's homeowners policy with Metropolitan became effective on December 18, 1984.

In May, 1985, Miller submitted a claim for fire loss as a result of damages to an out-building with an estimated loss of $8000.00. In conducting a claims investigation of this incident, Metropolitan discovered that Miller had falsely reported that he had not had any losses in the previous five (5) years. Metropolitan learned that Miller had experienced three previous fire losses under his prior homeowners policy. Miller filed claims for fire losses in December, 1982 for an estimated loss of $3500.00; a claim in July, 1984 for a loss in excess of $3800.00; and a claim in August, 1984 for a loss in excess of $10,000.00. These prior fire losses were material to acceptance of the risk under Metropolitan's underwriting standards.

Metropolitan notified Miller by letter dated November 1, 1985 that his homeowners policy was rescinded effective December 18, 1984, *i.e. ab initio*. This notice failed to advise Miller: of any procedures to be followed in prosecuting an appeal; of a right to request a review of Metropolitan's action by the Commissioner; of his possible eligibility of insurance from the Fair Plan; or of a day on which the termination of his homeowners policy would be effective not less than thirty (30) days from the notice's date of delivery or mailing.

Miller requested review by the Insurance Department (Department) to determine whether Metropolitan's rescission of the policy was in compliance with Act 205. The Department conducted an investigation and determined that Metropolitan was, in fact, in violation of Act 205 by rescinding coverage *ab initio*. Metropolitan requested a formal administrative hearing on the

matter which was held on June 10, 1986. Thereafter, the Commissioner issued his order and adjudication which affirmed the decision of the Department. Metropolitan petitions for review of that order.

The decision of the Commissioner was based upon his conclusion that Act 205 provides the exclusive means by which an insurer may terminate a homeowners insurance policy which has been in effect for more than sixty (60) days, superseding all other methods of termination. Because Act 205 is silent with regard to rescission of a homeowners policy, the Commissioner concluded that Metropolitan had violated the Act by improperly rescinding Miller's policy. Therefore, the Commissioner ordered Metropolitan to cease and desist from rescinding Miller's policy and to reinstate the policy. The issue before this Court is whether Act 205 supersedes all methods of termination of homeowners insurance not contained in the Act.

This Court addressed a similar issue with respect to an insurer's rescission of an automobile insurance policy in its recent decision in *Metropolitan Property & Liability Insurance Company v. Pennsylvania Insurance Commissioner*, 97 Pa. Commonwealth Ct. 219, 509 A.2d 1346 (1986), affirmed in a plurality opinion by our Supreme Court at Pa. , 535 A.2d 588 (1987). An examination of the sound reasoning applied in our decision in that case will aid in our analysis of the issue at hand.

In *Metropolitan*, we held that the General Assembly, in enacting what is commonly known as Act 78,[2] intended that it supersede all common law rights and

---

[2] An Act regulating the writing, cancellation of or refusal to renew policies of automobile insurance; and imposing powers and duties on the Insurance Commissioner therefor, Act of June 5, 1968, P.L. 140, *as amended*, 40 P.S. §§1008.1-1008.11.

remedies and that, therefore, the insurer was able to terminate an automobile insurance policy solely by the means provided under that statute. In reaching this conclusion, we noted that Act 78 was void of explicit language which indicated that the statute was meant to supersede the common law or previous statutory methods of termination.

Such is the case with Act 205, which is before the scrutiny of this Court today. It contains no specific language indicating that all common law or previous statutory remedies of termination are superseded by the Act. Therefore, as in *Metropolitan,* we must, where the language of the statute is not explicit, ascertain and effectuate the intention of the General Assembly by applying our rules of statutory construction. *See* Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a). In ascertaining this intent, we may consider, among other things:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C. S. §1921(c).

The Commissioner, in the discussion portion of his Order and Adjudication found that:

Clearly the Act represents a comprehensive effort by the Legislature to restrict unfair or

deceptive acts or practices in the business of insurance, and among those acts specifically defined as unfair is the cancellation or nonrenewal of a homeowners policy, which has been in effect for more than sixty (60) days, except under certain specified circumstances. The Act is silent with regard to rescission of a homeowners policy.

. . .

The Act obviously seeks to protect consumers from the unwarranted and unjustified termination of homeowners policies and to permit termination only for certain specified reasons. It would be absurd to conclude that the Legislature intended for the Act to extend its protection only to those consumers whose policies are cancelled or nonrenewed, and not to those consumers whose policies are rescinded, a more injurious consequence.

In *Metropolitan,* this Court clarified the difference between rescission and cancellation of a contract:

Rescission of a contract and cancellation of a contract are two separate and distinct legal concepts. A rescission amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief. Cancellation is an act destroying the force and effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other. . . .

*Id.* at 223, 509 A.2d at 1348.

Noting that Act 78 made provision only for cancellations and refusals to renew as methods of termination,

this Court found that "[h]ad the General Assembly also wanted to provide a remedy in rescission, they surely would have so done." *Id.* at 224, 509 A.2d at 1349. Citing the case of *Commonwealth v. Aljia Dumas Private Detective Agency, Inc.,* 246 Pa. Superior Ct. 140, 369 A.2d 850 (1977), for the proposition that an additional remedy will not be created from the statute when the legislature clearly expressed its intent, we concluded that the General Assembly's intent was clearly to provide a remedy for misrepresentation by cancellation, rather than by some other method. The Court went on to point out that Act 78 outlined with specificity the reasons for which an insurer could terminate a policy and the procedures to be followed in such termination. Furthermore, we found most persuasive the fact that Section 6 of Act 78, 40 P.S. §1008.6, specified when Act 78 was inapplicable. Therefore, we concluded that had the Legislature intended to exempt the remedy of rescission from Act 78's application, it would have done so with specificity in that Section. Considering Act 78 as a whole, this Court held that its enactment was intended to create a thorough and comprehensive scheme to govern interpretation of automobile insurance, superseding the common law remedies concerning termination.

We apply an equal analysis to Act 205 and reach a similar conclusion with respect to the termination of homeowners insurance. We begin this analysis with an examination of the intent of the General Assembly in enacting Act 205. As is clear from the declaration of purpose set forth in Section 2 of the Act, 40 P.S. §1171.2, this legislation was enacted for the protection of consumers from unfair or deceptive practices in the insurance industry. It provides:

> The purpose of this act is to regulate trade practices in the business of insurance in accor-

dance with the intent of congress as expressed in the Act of Congress of March 9, 1945, (Public Law 15, 79th Congress), by defining or providing for the determination of all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined. (Footnote omitted.)

Section 5(a)(9). of the Act reads in pertinent part:

(a) 'Unfair methods of competition' and 'unfair or deceptive acts or practices' in the business of insurance means:

. . .

(9) Cancelling any policy of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more or refusing to renew any such policy unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company; or there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued; or there is a substantial increase in hazards insured against by reason of wilful or negligent acts or omissions by the insured; or the insured has failed to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit; or for any other reasons approved by the commissioner pursuant to rules and regulations promulgated by the commissioner. No cancellation or refusal to renew by any person shall be effective unless

a written notice of the cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address. Such notice shall:

(i) Be approved as to form by the insurance commissioner prior to use.

(ii) State the date, not less than thirty days after the date of delivery or mailing on which such cancellation or refusal to renew shall become effective.

(iii) State the specific reason or reasons of the insurer for cancellation or refusal to renew.

(iv) Advise the insured of his right to request, in writing, within ten days of the receipt of the notice of cancellation or intention not to renew that the insurance commissioner review the action of the insurer.

(v) Advise the insured of his possible eligibility for insurance under the act of July 31, 1968 (P.L. 738, No. 233), known as 'The Pennsylvania Fair Plan Act,' or the Pennsylvania Assigned Risk Plan. (Footnote omitted.)

(vi) Advise the insured in a form commonly understandable of the provisions of subparagraphs (II), (III) and (IV) of this paragraph as they limit permissible time and reasons for cancellation.

(vii) Advise the insured of the procedures to be followed in prosecuting an appeal.

As in Act 78, Act 205 specifies only cancellation and nonrenewal as methods of termination. Had the Legislature desired or intended to provide the remedy of rescission, they would have so indicated. Section 5(a)(9) of Act 205 also provides specific guidelines as to the procedure to be followed in the cancellation or nonrenewal of policies. Moreover, Section (c) of Act 205, 40 P.S.

§1171.5(c), lists the circumstances in which Section 5(a)(9) is inapplicable. Had the General Assembly intended to maintain a common law remedy of rescission for misrepresentation it most certainly would have done so in that section.

Considering the purpose of the act and the language contained therein, we reach the conclusion that the Commissioner was correct in holding that the Legislature's intent was to create a balance between the Commonwealth's interest in deterring fraud and its interest in protecting the consuming public from unjustified termination of homeowners policies. Moreover, the regulations promulgated by the Commissioner in conjunction with Act 205 provide support for our further conclusion that the Legislature intended, through Act 205, to provide a unitary administrative review procedure. These regulations, at 31 Pa. Code §59.1-59.13, specify the requirements for effective notice and appeal of a cancellation or refusal to renew a homeowners policy.

The position advanced by Metropolitan that a decision favoring the appellees punishes the insurer and rewards dishonesty is without merit. Justice McDermott, writing for the plurality in *Metropolitan,* Pa. , at , 535 A.2d at 593, noted that:

appellants' argument ignores the fact that they are merely the victims of their own haste. There is no requirement in Act 78, or anywhere else, that an insurer must accept an applicants' answers at face value and offer immediate coverage. The law provides insurers with an opportunity to verify information before extending coverage. However, as a marketing tool some insurers, such as appellants, have opted to make immediate coverage available to their customers based on nothing more than up-front money and

the customer's representations. The insurers are now seeking our protection from such business practices by claiming that they should not be the victims of their own blind faith. We see no strong social policy dictating such protection. In fact there is at least one strong social policy operating against the court's assuming such a position, and that is that we would be effectively discouraging insurers' from verifying their applicants' representations, since such information would only become relevant when a claim was filed at which time any inconsistencies would be a basis for an attempted rescission. Obviously, this would only engender havoc in an area where the General Assembly specifically sought to avoid it.

We adopt this reasoning and conclude that the insurers, in the words of Justice MCDERMOTT, "have it well within their power to halt the chaos which they fear." *Id.* Act 205 clearly provides an insurer with a sixty day period after the initiation of a policy within which he may cancel or refuse to renew. The Act affords the insurer the time to investigate the application during this sixty day grace period.[3] Should the insurer discover a misrepresentation after the sixty day period, he may only cancel or refuse to renew in accordance with the Act. This Act, which is directed at remedying unfair insurance practices is designed to discourage insurers in delaying their investigation of policyholders until after a claim is made and then rescinding the policy *ab initio*.

---

[3] The regulation at 31 Pa. Code §59.9(b) provides in pertinent part: "The period of 60 days referred to in section 5(a)(9) and (c)(3) of [the Act] (40 P.S. §1171.5(a)(9) and (c)(3)) is intended to provide to insurers a reasonable period of time, if desired, to investigate thoroughly a particular risk while extending coverage during the period of investigation. . . ."

Allowing insurers a general right to rescind *ab initio* undermines public confidence and trust in the reliability and certainty of insurance protection. This is a result which would certainly appear unfavorable when considering that the General Assembly is statutorily presumed to place the public interest above that of specific private insurers. *See* 1 Pa. C. S. §1922(5).

Having determined that Act 205 supersedes all methods of termination and that rescission is not included as an enumerated remedy, we affirm the Order and Adjudication of the Commissioner.

### ORDER

AND NOW, this 28th day of January, 1988, the Order and Adjudication of the Insurance Commissioner in the above-captioned matter is hereby affirmed.