580 A.2d 300

**METROPOLITAN PROPERTY AND LIABILITY
INSURANCE COMPANY, Appellant,**

**v.**

**INSURANCE COMMISSIONER OF the COMMONWEALTH
OF PENNSYLVANIA and Edgar Miller, Appellee.**

Supreme Court of Pennsylvania.

Reargued Jan. 22, 1990.

Decided Sept. 24, 1990.

Harvey Bartle, III, Philadelphia, for appellant.

Arthur Selikoff, Harrisburg, for appellee.

Edgar Miller, pro se.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal from an order of the Commonwealth Court affirming the decision of the Insurance Commissioner that the appellant violated the Unfair Insurance Practices Act ("UIPA") when it rescinded the policy of appellee,

Edgar Miller. The question presented on appeal is whether UIPA precludes the common law remedy of rescission *ab initio* of an insurance policy which was fraudulently obtained.

In November of 1984, Mr. Edgar Miller applied for home-owner's insurance with Metropolitan Property and Liability Insurance Company ("Metropolitan"). The Metropolitan agent completed the application based upon the information provided by Mr. Miller. In response to questions regarding any incidents of loss within the previous five years, Mr. Miller replied, "No," which was then recorded on the application. Mr. Miller then signed the completed application. Immediately above the signature of Mr. Miller was the following passage:

> I hereby apply for the insurance indicated and represent (1) I have read this application, and (2) the statements hereon are correct.

At the time he signed the application, Mr. Miller paid Metropolitan a premium of Four Hundred Thirty-eight Dollars ($438) for the policy.

On December 5, 1984, Metropolitan made a routine "spot check" call to Mr. Miller to ask about incidents of prior losses. Appellee advised the Metropolitan agent that he had sustained a loss of Two Thousand Dollars ($2,000) when a shed had burned down. The agent then determined that this misrepresentation was not material and merely exchanged the previous answer on the application with the information provided by Mr. Miller. Metropolitan made no further inquiries or investigation regarding this inconsistency. The policy was then issued on December 18, 1984.

In May 1985, Mr. Miller filed a claim for fire loss to his property totaling over Eight Thousand Dollars ($8,000). Through its claim investigation, Metropolitan discovered that Mr. Miller had suffered three prior fire losses within the past five years totaling in excess of Seventeen Thousand Dollars ($17,000). In November 1985, Metropolitan notified Mr. Miller that his policy had been rescinded effective December 18, 1984, the date the policy was issued.

Appellee, Miller, contested the rescission of his policy before the Insurance Commissioner, arguing that the Unfair Insurance Practices Act of 1974, 40 Pa.S. § 1171.5, limited the means of terminating an insurance policy to cancellation or non-renewal. In either event Metropolitan would be barred from rescinding the policy retroactively. The Insurance Commissioner agreed, and the Commonwealth Court affirmed that decision. 537 A.2d 53.

Preliminarily, we note that the present case involves an issue similar to that addressed in *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner ("Bonnie Beck")*, 517 Pa. 218, 535 A.2d 588 (1987) (plurality opinion). In *Bonnie Beck* we were called to interpret the language of Act 78, 40 Pa.C.S. 1008.1, *et seq.*, concerning automobile insurance. The insured parties in *Bonnie Beck* had made misrepresentations as to their moving violations at the time they applied for automobile insurance. The plurality opinion, authored by Mr. Justice McDermott and joined by one other Justice, held that the legislature, through its enactment of such a pervasive and encompassing regulation, intended to foreclose any previously held common law right not set forth in the Act. Therefore, the insurer was precluded from rescinding the policy *ab initio* as provided by common law contract principles. In a concurring opinion, joined by Mr. Justice Flaherty and Mr. Justice Papadakos, this author stated:

> In my view the fact that the legislature decided to provide a procedure for cancellation or refusal to renew policies and placed these matters under the auspices of the insurance commissioner does not warrant the inference of the elimination of the well recognized contract remedy of rescission where a fraud has occurred. (Footnote omitted.)

*Id.*, 517 Pa. at 232, 535 A.2d at 595.

The concurring result was justified because the misrepresentations made by the insured concerning moving violations were not related to the claims of loss involved, vandalism and burglary.

In the present case, we are again called to interpret the legislative intent regarding the continued application of basic common law contract principles to insurance policies. Prior to the enactment of UIPA, an insurance policy was viewed as an ordinary contract. *Cleland Simpson Co. v. Fireman's Insurance Co.*, 392 Pa. 67, 140 A.2d 41 (1958); *Eastern Assoc. Coal Co. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068 (3rd Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 843 (1981); *Blair v. Berkshire Life Insurance Co.*, 429 F.2d 996 (3rd Cir.1970). As such, it was subject to the laws that traditionally governed contractual relationships. Those laws render voidable a contract whose formation was procured by the fraudulent representations of one of the parties. *D'Allessandro v. Durham Life Insurance Co.*, 503 Pa. 33, 467 A.2d 1303 (1983); *College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976). An insurance policy was similarly voidable by an insurer upon a finding that an insured had fraudulently misrepresented material information. *See, e.g., Prudential Insurance Co. v. Pagano*, 407 Pa. 473, 181 A.2d 319 (1962); *Allstate Insurance Co. v. Stinger*, 400 Pa. 533, 163 A.2d 74 (1960); *A.G. Allebach, Inc. v. Hurley*, 373 Pa.Super. 41, 540 A.2d 289 (1988); *Baldwin v. Prudential Insurance Co.*, 215 Pa.Super. 434, 258 A.2d 660 (1969).

Whenever we are called to interpret a statute and determine the legislative intent, the analysis must necessarily begin with the Statutory Construction Act. 1 Pa.C.S. § 1921 et seq. Under that Act an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.

The UIPA was enacted to codify and regulate the practices of the insurance industry. In its declaration of purpose the legislature stated:

The purpose of this act is to regulate trade practices in the business of insurance in accordance with the intent of

Congress as expressed in the act of Congress of March 9, 1945 (Public Law 15, 79th Congress) (footnote omitted), by defining or providing for the determination of all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

40 Pa.S. § 1171.2.

Throughout the Act the practices determined to be unfair are expressly stated. Included in those practices which are unfair is the cancellation or refusal to renew a policy "unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company." 40 Pa.S. § 1171.5. This provision makes no reference to the common law right to rescission. Such an omission cannot be interpreted as an intention to foreclose such a long-standing right. In fact the Act itself makes it clear that the provisions set forth are not all encompassing and may be supplemented by existing law. Section 1171.15 states:

(a) The act of June 5, 1947 (P.L. 445, No. 202) known as "The Insurance Unfair Practices Act," is repealed absolutely.

(b) All other acts and parts of acts are repealed insofar as they are inconsistent herewith.

The right to rescind a contract under traditional common law remedies, where the contract was procured through fraudulent means, cannot be considered inconsistent with the provisions of the UIPA. The UIPA seeks to encourage fair practices within the insurance industry by imposing sanctions upon companies who engage in deceptive practices. The Act, however, was not intended to assist the policy holder in attempting to defraud the insurance company. The purpose of the UIPA in establishing protection for the insurance consumer from unfair practices being employed by the insurance industry is not in conflict with the traditional equitable remedies that would prevent the policy holder from attempting to defraud the company. There is

no basis for a finding of an implied abrogation of the common law remedy of rescission which would preclude the industry from redress for fraudulent misrepresentations made by policy holders. Such a construction would be unreasonable.

Thus, with both common law and statutory remedies available, the determination of whether a remedy provided by the Act is sufficient should be left to the courts. The common law contract principle of rescission should not be precluded as an alternative remedy if the court finds those provided by the Act insufficient.

■ In this case the appellee, Mr. Miller, falsely informed Metropolitan that he had not suffered any property loss during the previous five years, when in fact he had suffered three separate incidents of property loss amounting to claims in excess of $17,000. This misrepresentation was certainly material to the risk accepted by Metropolitan. At a later inquiry the appellee, Mr. Miller, informed a Metropolitan agent that he had suffered a minor loss to a shed amounting to a $2,000 claim. While the appellee admitted to property loss during the previous five years, the amount of damage was still far below what actually occurred. Again this misrepresentation was material to the risk accepted by Metropolitan. Under basic contract principles, these fraudulent statements would certainly justify the rescission of the policy after discovery of the misrepresentations. Thus, the Commonwealth Court and the Insurance Commissioner improperly precluded Metropolitan from exercising its common law right of rescission.

Accordingly, the decision of the Commonwealth Court affirming the action of the Insurance Commissioner is reversed.

ZAPPALA, J., files a concurring opinion in which LARSEN and McDERMOTT, JJ., join.

ZAPPALA, Justice, concurring.

I concur with the result reached by the majority but am compelled to enunciate my separate reasons.

Edgar Miller's action is founded on § 1171.5(9) of the Unfair Insurance Practices Act (UIPA). Under § 1171.4 of UIPA, a person is prohibited from engaging in "any trade practice which is defined or determined to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance...." Section 1171.5 then defines "unfair methods of competition" and "unfair or deceptive acts or practices". Subsection (9) of § 1171.5 then provides one act that constitutes an unfair practice:

> (9) Cancelling any policy of insurance covering owner-occupied private residential properties or personal property of individual that has been in force for sixty days or more or refusing to renew any such policy unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company; ... No cancellation or refusal to renew by any person shall be effective unless a written notice of the cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address. Such notice shall:
>
>      \*     \*     \*     \*     \*     \*
>
> (ii) State the date, not less than thirty days after the date of delivery or mailing on which such cancellation or refusal to renew shall become effective.

Under subsection (9), an unfair practice occurs if an insurance carrier cancels a homeowner's insurance policy in effect sixty days or longer without the proper notification. An exception to this provision is the procurement of that policy through fraud or misrepresentation. Thus, if a policy is obtained through fraud, the cancellation provisions of UIPA are not applicable and failure to adhere to § 1171.5(9) is not considered an unfair practice.

Without the benefit of § 1171.5(9), Miller is not entitled to thirty days notice prior to cancellation and the insurance carrier would be entitled to avail itself of remedies it reserved in its policy. In this appeal, the Appellant specifically reserved the right to void the insurance contract if procured through the use of fraud or misrepresentation. Exercising this right, the Appellant voided Miller's contract retroactive to the date the policy was issued. Since I see no basis for prohibiting the Appellant from exercising rights reserved under its contract and not contrary to UIPA, I concur in the majority's reversal of the Commonwealth Court Order affirming the actions of the insurance commissioner.

However, notwithstanding my concurrence with the actions of the majority, I still adhere to the views expressed by Justice McDermott in *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner ("Bonnie Beck")*, 517 Pa. 218, 535 A.2d 588 (1987) (plurality opinion). In *Bonnie Beck*, we were asked to review Act 78 and determine whether the General Assembly had effectively abrogated the right of rescission with respect to automobile insurance. Unlike UIPA, Act 78 was amended to read as follows:

No insurer shall cancel a policy except for one or more of the following specified reasons:

*     *     *     *     *     *

(3) a determination that the insured has concealed a material fact, or has made a material allegation contrary to fact, or has made a misrepresentation of material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by the insurer.

40 P.S. § 1008.4. Thus, the General Assembly made it clear in Act 78 that even if an insurance carrier could establish a material misrepresentation in the procurement of that insurance, the exclusive remedy was cancellation of the automobile insurance policy. Prior to this amendment, material misrepresentation was not included in Act 78 as a basis for

termination of the policy. With this amendment, the Legislature clearly preempted and limited the available remedies to an automobile insurance carrier. It also appears that the amendment was in direct response to the judiciary's refusal to restrict an automobile insurance carrier's remedies without a clear legislative intent. *See Safeguard Mutual Insurance Company v. Huggins*, 241 Pa.Super. 382, 361 A.2d 711 (1976).

Unfortunately for Mr. Miller, the Legislature has not denied an insurance carrier its common law right of rescission under UIPA as it has done under Act 78. Until such time as the Legislature acts, I am constrained to adhere to the clear mandate of § 1171.5(9) and permit the insurance carrier to exercise its common law right of rescission if preserved in the contract.

LARSEN and McDERMOTT, JJ., join in this Concurring Opinion.