## Cleland Simpson Co. v. Firemen's Insurance Co. of Newark

*Welles & Mackie*, for plaintiff.

*Carlon M. O'Malley* and *White, Williams & Scott*, for defendants.

HOBAN, P. J., January 11, 1957.—The action is assumpsit on policies of insurance covering plaintiff

against losses caused by business interruption under circumstances insured against. Defendants file preliminary objections in the nature of a demurrer and ask for judgment.

This action is an aftermath of the havoc wrought by hurricane Diane in northeastern Pennsylvania in August, 1955. On the night of August 17, 1955, a tremendous rain began to fall which did not cease until midnight, August 18-19. As a result of this rainfall, catastrophe struck northeastern Pennsylvania. All the mountain streams in the area went into flood. Tremendous volumes of water poured through the drainage system leading on one side of the Pocono Mountains to the Delaware River and on the other side to the Susquehanna Valley. Death and destruction in historic figures followed. The Roaring Brook, which courses its way through the City of Scranton, and other streams tributary to the Lackawanna River which in turn flows into the Susquehanna, carried immense volumes of water in the flash flood, and since the water mains which furnish the City of Scranton with a usually adequate supply of water were in the path of the flood, they were broken and destroyed. On August 19, 1955, two-thirds of the City of Scranton, including the area in which the business premises of plaintiff are located, was found to be without any water supply for any purpose, including of course the normal supply to the fire hydrants which furnish the fire department of the city with its chief weapon in the fight against fire. It was not until August 23 that the mains were repaired sufficiently to furnish the central city area with water for fire fighting purposes, and for weeks thereafter the water was not potable and citizens in general had to purify their domestic water supply by boiling it or else get other water from some other source.

The dangers to life and the actual and threatened damages to property were so great that all the agencies of civil government, of the military services and the voluntary relief and disaster agencies had to make extended efforts to relieve the necessities of the area. The American Red Cross, the United States Army Engineers, the National Guard of Pennsylvania, the United States Marine Corps Reserve, the Army Organized Reserves, the United States Air Force, the United States Navy, the Salvation Army, churches, veterans' and fraternal associations, civic associations all were called into intense and prolonged action because of the disaster.

For the period August 19 to 23, 1955, the city was defenseless against fire but due to the watchfulness and determination of its citizens the city was spared that disaster. There was no fire. Specifically for our purpose no one of the properties covered by this policy was exposed to any damage by fire or lightning.

We give the foregoing recital of events, of all which this court may well take judicial knowledge, because it furnishes the background and justification for the wise and considered action of the mayor of Scranton as detailed in the following paragraph, which also in short form states plaintiff's case.

In view of the dangers and hazards involved, particularly those which could be anticipated in the busy business and commercial section of the city, the mayor of Scranton, after consultation with advisors, on August 19, 1955, declared a state of emergency and ordered all stores to close because of a serious fire danger resulting from the flood which cut off the water supply in the City of Scranton. As a result of such prohibition plaintiff had no access to its business premises on Friday, August 19, 1955, on Monday, August 22, 1955, and on Tuesday, August 23, 1955.

It is for the losses incurred by interruption to plaintiff's business on those particular days that plaintiff now brings this action.

The question here is whether these losses are covered by the terms of the policy. We quote the pertinent provisions of the policy as taken from that issued by the Firemen's Insurance Company of Newark, N. J. It is conceded that the other policies are exactly similar as to their terms with the exception of the amount of coverage. The cover sheet of the policy reads as follows:

"Firemen's Insurance Company of Newark, New Jersey . . . No. 2383 . . . expires January 31, 1956 . . . property, . . . business interruption, including main building, Linden Street, Gibson Street."

The policy proper opens with the insuring clause as follows:

"Insurance is provided against only those perils and for only those coverages indicated below by a premium charge and against other perils and for other coverages only when endorsed hereon or added hereto.

"PERILS INSURED AGAINST AND COVERAGES PROVIDED.

"Fire and Lightning.

"In consideration of the provisions and stipulations herein or added hereto . . . this Company . . . does insure Cleland Simpson Company and legal representatives and without compensation for loss resulting from interruption of business or manufacture . . . against all direct loss by fire, lightning and by removal from premises endangered by the perils insured against in this policy except as hereinafter provided.

"SEE FORMS ATTACHED:"

The basic policy contains, inter alia, this proviso under the heading "Perils Not Included":

"This Company shall not be liable for loss by fire or other perils insured against in this policy caused

directly or indirectly by: . . . (h) Order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy."

Thus we see that the basic policy was a standard form of policy insuring against loss by fire or lightning and excluding any indirect or consequential damage caused by either fire or lightning, the perils specifically insured against.

To turn this basic contract into the so-called business interruption insurance contract there was added:

"Business interruption Form No. 3, Single Item Gross Earnings Form—Mercantile."

Paragraph 1 of this form reads as follows:

"1. Subject to all its stipulations, limitations and conditions, this policy covers only against loss directly resulting from necessary interruption of business caused by destruction or damage by the perils insured against occurring during the term of this policy. . . ."

Paragraph 11 of the same form reads as follows:

"Interruption by civil authority: Liability under this policy is extended to include *actual loss as covered hereunder sustained during the period of time, not exceeding two weeks,* when as a direct result of a peril insured against access to the premises described is prohibited by order of civil authority."

Thus we see the buildup of the contract. First, the specification of the perils insured against and confining the coverage to direct losses from such perils. Secondly, the change by form no. 3 of the coverage provision, substituting business interruption loss, (otherwise defined as gross profit) for the direct loss from fire or lightning, but limiting the loss to that caused by *destruction* or *damage* by the perils (fire and lightning) insured against. Thirdly, extending this coverage to include a time-limited loss due to pro-

hibition of access to the premises by order of civil authority, but again as a *direct result* of a peril insured against.

We can only conclude that the clear language of the policy restricts the loss to that following a direct invasion of the property by fire or another specified peril and the subsequent prohibition by civil authority of access to the properties. In view of the limiting clauses which continually emphasize the direct nature of the loss insured against, we deem it unnecessary to discuss the only precedent called to our attention by either party. Hillier v. Allegheny County Mutual Ins. Co., 3 Pa. 470, opinion by Gibson, C. J., 1846. Whether the principle announced by Gibson, C. J., that "Insurers are answerable for direct and immediate, not for consequential and remote, losses from a peril insured against" would now be considered sound law or not, it is without doubt the law that a policy of insurance is a contract, that the insured gets what protection he pays for and that where the clear language of the contract specifies the risk, only losses due to the risk insured against are compensable under the contract.

Here the specified peril is fire; the risk insured against is loss of profit through business interruption caused directly by fire and extended for a period of time to continued interruption caused by the action of civil authorities in preventing access to the business premises as a direct result of fire.

By no process of logic can we read into the policy that the risk includes prohibition of access because of apprehension of either the possibility or probability of a fire which never occurred. We have no doubt that a policy could be written to cover such a contingency, but this policy was not so written.

In arriving at this decision we are mindful of the principle in insurance law that where ambiguity exists

in an insurance policy, it should be resolved in favor of the insured. We regret that we can find no ambiguity in the policy under consideration.

The complaint seems to present fully all the pertinent facts and we can find no possibility of amendment so as to state a case. Hence, upon sustaining the preliminary objection defendants are entitled to judgment.

Now, January 11, 1957, the preliminary objection in the nature of a demurrer to plaintiff's complaint is sustained, and judgment is directed to be entered in favor of defendants.