Cleland Simpson Company, Appellant, *v.* Firemen's Insurance Company.

Argued January 14, 1958. Before Jones, C. J., Bell, Chidsey, Musmanno, Jones and Cohen, JJ.

*C. H. Welles, 3rd,* with him *Welles & Mackie,* for appellant.

*Thomas Raeburn White, Jr.,* with him *John W. Bour, Thomas Raeburn White, O'Malley, Morgan, Bour & Gallagher,* and *White, Williams & Scott,* for appellees.

OPINION PER CURIAM, March 26, 1958:

The judgment of the Court of Common Pleas of Lackawanna County is affirmed on the opinion of Judge HOBAN, reported in 11 Pa. D. & C. 2d 607.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

In August, 1955, Diane, a hurricane which belied the gentle characteristics ordinarily associated with so docile a name, struck savagely throughout northeastern Pennsylvania, wreaking a havoc of devastating proportions. The City of Scranton, which lay in the direct path of the cyclonic storm, bent under the full fury of Diane's violence and ferocity. The able and veteran Mayor of Scranton, James T. Hanlon, proclaimed a state of emergency and ordered all stores in the city to close their doors because of serious fire danger. The Cleland Simpson Company, plaintiff in this case, obeyed the order and for three days ceased business operations, with consequent heavy money losses. It endeavored to recoup these losses by turning to its fire insurance policy, a provision of which reads: "Interruption by civil authority: Liability under this policy is extended to include actual loss as covered

hereunder sustained during the period of time, not exceeding two weeks, when as a direct result of a peril insured against access to the premises described is prohibited by order of civil authority."

When the insurance company refused to make any payment under this provision of the policy, the plaintiff brought an action in assumpsit, to which the defendant company answered with preliminary objections. The Court of Common Pleas of Lackawanna County entered judgment for the defendant, and the plaintiff has appealed.

In this appeal we are not concerned with any complicated question of law. The State Reports, the text books, and digests may rest undisturbed on their shelves during consideration of the positions taken by the plaintiff and the defendant. All that is needed in disposing of this case is a dictionary. And we would not even dust off that worthy tome except for the fact that a judicial opinion is not generally considered complete unless reference is made therein to some other judge, author, or compiler of words. No matter how simple and self-convincing a statement may be in an opinion, whether it be a majority or dissenting opinion, the author must show that he is not original, because originality carries scant authority in law. We will quote from Noah Webster later.

The Majority of this Court has accepted the lower court's opinion as its own so that I will, therefore, refer to that opinion as the opinion of this Court. Thus, in disposing of the plaintiff's claim, the Majority says: "We can only conclude that the clear language of the policy restricts the loss to that following a direct invasion of the property by fire or another specified peril and the subsequent prohibition by civil authority of access to the properties."

But does the clear language of the policy so state? I repeat the insurance provision which is the battleground of this controversy: "Liability under this policy is extended to include actual loss as covered hereunder sustained during the period of time, not exceeding two weeks, when as a direct result of a peril insured against access to the premises described is prohibited by order of civil authority." It will be noted that the paragraph says nothing about a "direct invasion of the property by fire." It says that the insured is entitled to recovery when the order of civil authority prevents access to one's premises as a direct result of "a peril insured against." What is the peril insured against? Obviously, fire. What was the peril which the good Mayor of Scranton was seeking to prevent? Obviously, fire.

In order to arrive at the conclusion reached by the Majority of this Court, the insurance provision would have had to read that liability is extended to include actual loss "as a direct result of *destruction* caused by fire".

After the Majority laid down the fallacy that the policy was speaking of destruction by fire instead of peril by fire, it then moved into an amplification of that fallacy, namely, "Here the specified peril is fire; the risk insured against is loss of profit through business interruption caused directly by fire and extended for a period of time to continued interruption caused by the action of civil authorities in preventing access to the business premises as a direct result of fire."

But I must respectfully repeat that the risk insured against in the policy was not loss of profit caused directly by fire. The loss insured against, in the direct words of the policy, was the *peril* of fire, which caused the civil authorities to prohibit admittance into the plaintiff's premises.

What do we mean by peril? Everyone knows what so simple a word means, but, as I said above, it is not enough to say that everyone knows something. We must show, in a judicial opinion, that one particular person, or one particular court said something on the subject before we bow in acknowledgment of a self-speaking truth. Mr. Webster, with all-conclusive finality, defines *peril* in his New Unabridged International Dictionary as follows: "The situation or the state of being in impending or threatening danger; exposure of one's person, property, health, morals, or the like, to the risk of being injured, destroyed or lost."

A person may go through a dozen perils of fire and emerge without a singed eyelash. A property may be subjected to a thousand dangers of fire and not suffer a blackened brick or a cracked window. Peril is an impending danger. So long as the danger remains only a peril, no loss results. One fond of intoxicating liquor may sit beside a barrel of whiskey for a day, but so long as no one smashes the bung, he will be as sober at the end of the day as when, with parched tongue, he began the ordeal of temptation. A person may walk across a rickety bridge, at the peril of his life, but if he makes the other side safely, he has not suffered any loss. Peril is the fuse which leads to explosion, but if the fuse is never lighted, no explosion follows, and, thus, the peril never achieves crystallization into damage or destruction.

The Majority insists that there had to be a fire before the plaintiff in this case could recover. Of course, we are always speaking here of fire away from the insured premises because, obviously, if the premises themselves were touched by fire, there would be no question of recovery under other provisions of the policy.

Let us now see where the reasoning of the Majority leads us. It concedes that if several buildings in the

vicinity of the plaintiff's property had actually caught fire, even though the plaintiff's property was not touched by a single flame or flying cinder, the plaintiff would be entitled to recover, but if it is shown that, in spite of the intervention of civil authority to prevent fire, no fire resulted, the plaintiff has suffered no loss. But the plaintiff suffered its losses regardless of whether the neighboring house caught fire or not. It suffered losses when the Mayor padlocked the plaintiff's doors because of the peril of fire.

The Majority says: "By no process of logic can we read into the policy that the risk includes prohibition of access because of apprehension of either the possibility or probability of a fire which never occurred. We have no doubt that a policy could be written to cover such a contingency, but this policy was not so written."

Paraphrasing the Majority's language, I would say that there is no doubt that a policy could be written to exclude liability where there is a prohibition of access with loss of profits but no actual fire, but that is not the way the policy is presently written. As presently written, liability on the part of the defendant company attached just as soon as the Mayor issued his order for the plaintiff to close its doors because of the *peril* of fire. That is exactly what the policy says, that is exactly what the company received premiums for, and that is exactly what the plaintiff insured against.

I cannot go along with a decision which deprives an injured plaintiff of a recovery by means of a tortured reasoning which disregards the law of contracts, which contradicts the dictionary, and which defies the principles of simple justice. Hence I dissent.