**Rush v. Westfield Insurance Company**

*Leonard G. Brown III,* for plaintiffs.
*Robert M. Runyon III,* for defendants.

CULLEN, *J.*, June 13, 2005—Pending before the court is the motion for judgment on the pleadings filed by defendants, Westfield Insurance Company, Westfield Group and Old Guard Insurance Company, as well as the cross motion for judgment on the pleadings filed by plaintiffs, Robert C. Rush II and Marie Rush. The issue to be resolved is whether plaintiffs are entitled to be compensated for the loss of livestock under the farmowners' insurance policy purchased by them from defendants. The court concludes that whether plaintiffs have sustained a loss covered by the policy presents a factual issue which must be resolved at trial. Further, on the limited record before it, the court cannot determine whether defendants have acted in bad faith in the handling of plaintiffs' claim. Accordingly, both defendants' motion for judgment on the pleadings and plaintiffs' cross motion for judgment on the pleadings will be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs own and operate a dairy farm in Strasburg, Lancaster County, Pennsylvania. In order to maintain a relatively uniform temperature in the barn for their dairy cows, plaintiffs use a "tunnel ventilation system." This system, which is powered by electricity, consists of large fans on one side of the barn which blow air through the structure and maintain a constant temperature.

On September 19, 2003, during a storm, electric power to the farm was interrupted when a tree fell on a power line located on the property.

Plaintiffs allege their barn was without electricity for two days, as a result of which the cows suffered from hypothermia due to lack of ventilation. According to the

complaint, plaintiffs lost 56 cows and 14 calves and incurred other related financial losses.

When the loss occurred, plaintiffs were insured under a policy of insurance, policy number ** ******** issued by defendants.[1] On or before September 25, 2003, plaintiffs notified defendants of their claim. The claim was denied on September 26, 2003.

Following the denial of their claim, plaintiffs instituted this action by filing a complaint on November 14, 2003, alleging, inter alia, causes of action for breach of contract (Count I) and bad faith in violation of 42 Pa.C.S. §8371 (Count II).

On December 10, 2003, defendants filed preliminary objections which were denied in part and sustained in part by order of June 2, 2004.[2]

On August 18, 2004, defendants filed an answer and new matter. In their answer, defendants admitted that the falling tree resulted in an interruption of electric service to plaintiffs' farm but denied that the insurance policy in effect covered the loss of plaintiffs' livestock, and denied also that the claims adjuster had failed to properly evaluate the information pertinent to the claim or had acted in bad faith when he denied the claim.

---

1. Plaintiffs allege that all three defendants are liable under the policy while defendants contend the policy in question was issued solely by Old Guard Insurance Company. It is not necessary to resolve this dispute in order to address the coverage issue presented.

2. In its order, the court dismissed Count III of the complaint which alleged a breach of fiduciary duty on the part of defendants. The court also struck plaintiffs' demand for attorney's fees and punitive damages with respect to the breach of contract claim. Defendants' remaining objections were overruled.

Plaintiffs filed their answer to defendants' new matter on September 9, 2004.

On October 18, 2004, defendants filed a motion for judgment on the pleadings together with a supporting memorandum. On November 4, 2004, plaintiffs filed an answer to the motion and a brief. On December 2, 2004, plaintiffs filed a cross motion for judgment on the pleadings and a brief. Defendants filed their response on December 22, 2004. Both matters were thereafter assigned to the court for disposition.

## DISCUSSION

Rule 1034 of the Pennsylvania Rules of Civil Procedure permits any party to move for judgment on the pleadings after the pleadings are closed but within such time as not to unreasonably delay trial. Pa.R.C.P. 1034. A motion for judgment on the pleadings is similar to a demurrer and may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Booher v. Olczak,* 797 A.2d 342 (Pa. Super. 2002); *Mellon Bank N.A. v. National Union Insurance Company of Pittsburgh,* 768 A.2d 865 (Pa. Super. 2001). Judgment on the pleadings should be granted only in cases where the moving party's right to relief is certain. *Pilotti v. Mobil Oil Corporation,* 388 Pa. Super. 514, 565 A.2d 1227 (1989).

In deciding a motion for judgment on the pleadings,

"A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is

filed, considering only those facts which were specifically admitted." *Steiner v. Bell of Pennsylvania,* 426 Pa. Super. 84, 88, 626 A.2d 584, 586 (1993). (citation and footnote omitted)

In *Neuhard v. Travelers Insurance Co.,* 831 A.2d 602 (Pa. Super. 2003), the Superior Court explained that the interpretation of an insurance contract is generally a matter of law which requires a trial court to ascertain the intent of the parties as manifested by the language of the provisions in the written instrument.

"The task of interpreting an insurance contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. The polestar of our inquiry, therefore, is the language of the insurance policy." *Id.* at 604-605.

Defendants argue that their motion for judgment on the pleadings should be granted because the insurance policy does not provide coverage for the loss sustained

by plaintiffs. Specifically, defendants contend that the policy's coverage is limited to the perils listed under endorsement FO-356 of the policy. Because the loss was not caused by one of the perils enumerated in endorsement FO-356, defendants assert that plaintiffs are not entitled to compensation for loss of the livestock. Defendants also argue that plaintiffs cannot recover under the policy because they did not maintain an auxiliary power generator as required as a condition precedent for coverage under the policy.

Plaintiffs contend that their cross motion for judgment on the pleadings should be granted because the basic policy insured plaintiffs against direct physical loss to the livestock due to a windstorm which caused a power outage on the property. Plaintiffs dispute defendants' assertion that the language of the policy required a back-up generator as a condition precedent to basic coverage. Plaintiffs claim that a back-up generator was only required as a condition precedent for the additional coverage which they had purchased.

The court must determine whether the language of the policy in question is clear and unambiguous as to leave no doubt as to the rights and obligations of the parties.

Although the parties agree on the number of the insurance policy purchased by plaintiffs, ** ********, they disagree on its contents and each has submitted its own version. (Complaint, exhibits 1-24; answer, exhibit A.) However, it appears from the briefs that the relevant portions are included in both versions of the policy.

Initially, it is necessary to determine whether plaintiffs' policy provides any coverage for loss of livestock.

The basic farm property coverage is set forth in section FO-6 of the policy. (Complaint, exhibit 6; answer, exhibit A (AAIS, FO-6, Ed. 1.0, pp. 1-14).) Coverage F, scheduled farm personal property, is one of the principal property coverages described in the policy. Coverage F provides in pertinent part:

"Coverage F—Scheduled farm personal property

" 'We' cover the classes or items of farm personal property for which a 'limit' is shown on the 'declarations.' Coverage applies while property is on the 'insured premises.' . . .

"(4) Livestock[3]—'We' cover specifically scheduled 'livestock' for which a 'limit' is shown on the 'declarations.' 'We' also cover classes of livestock for which a 'limit' is shown on the 'declarations.' The 'limits' shown on the 'declarations' apply to covered 'livestock' while on or away from the 'insured premises.'

"The most 'we' pay for loss to any one head of 'livestock,' other than 'livestock' specifically scheduled on the 'declarations,' is the smallest of the following amounts:

"(a) 120 percent of the amount obtained by dividing the 'limit' for the affected class of 'livestock' by the number of head in that class owned by 'you' at the time of loss;

"(b) the actual cash value of the 'livestock' damaged or destroyed; or

"(c) $2,500." (Complaint, exhibit 6; answer, exhibit A (AAIS, FO-6, Ed. 1.0, pp. 3, 5).)

---

3. "Livestock" is defined to include cattle. (Complaint, exhibit 6; answer, exhibit A (AAIS, FO-6, Ed. 1.0, p. 2).)

The declarations portion of the policy lists "livestock" with a liability limit of $200,000. (Complaint, exhibit 1; answer, exhibit A (ML300-10-79).)

Defendants contend that the loss of plaintiffs' livestock was not covered because the livestock was not specifically scheduled under the policy. Section 4 of coverage F distinguishes between livestock that is specifically scheduled and livestock that is covered as a class. In this case, the policy is limited to $200,000 in coverage for the direct physical loss to plaintiffs' unscheduled class of livestock.

Since the policy includes coverage for plaintiffs' livestock as a class, the next issue is whether the loss occurred as a result of one of the perils for which coverage is provided.

Section FO-6 of the policy provides protection for the direct physical loss to property caused by the enumerated perils listed in the policy unless the loss is excluded under the general exclusions. (Complaint, exhibit 6; answer, exhibit A (AAIS, FO-6, Ed. 1.0, pp. 10-13).) Despite this language in the basic policy, defendants contend that the language of the declarations page, ML300-10-79, identifying coverage for livestock "per FO-356" limits coverage only to the perils identified in that endorsement.

Endorsement FO-356 states:

"Added Animal Perils . . .

"The coverage that applies to 'livestock' described above is extended by the following:

" 'We' pay for loss resulting from the death of 'livestock' described above caused by:

"(1) accidental shooting except by an 'insured,' members of an 'insured's' family, employees of an 'insured,' or persons residing on the 'insured premises';

"(2) drowning, excluding 'livestock' less than 30 days of age;

"(3) attack by dogs or wild animals except by a dog or wild animal owned by an 'insured,' members of an 'insured's' family, employees of an 'insured,' or persons residing on the 'insured premises'; and

"(4) collapse of a building.

"All other 'terms' of the policy apply." (Complaint, exhibit 22; answer, exhibit A (AAIS, FO-356, Ed. 1.0, p. 1).)

Plaintiffs contend that endorsement FO-356 is an extended coverage provision which adds additional perils to the basic policy and, therefore, is not the exclusive list of animal perils covered under the policy. The court concurs with this interpretation. Endorsement FO-356 specifically provides that coverage that applies to "livestock" under the policy is extended by the endorsement's provisions and that all other terms of the policy apply. In the absence of any language limiting this provision, endorsement FO-356 is reasonably interpreted to add the additional listed animal perils to the basic policy coverage.

Defendants also argue that plaintiffs are not entitled to coverage for loss of livestock under section G of the Additional Farmowners' Incidental Coverage. (Complaint, exhibit 15; answer, exhibit A (OGF-411-11/01).) This provision provides extended coverage for the death of poultry or livestock caused by the mechanical breakdown or the interruption of power to the equipment con-

trolling the temperature, atmosphere or movement of air within the building confining the covered poultry or livestock. *Id.* Defendants contend plaintiffs are ineligible for this coverage because they failed to maintain auxiliary power generating equipment as required by the policy.

Plaintiffs do not dispute defendants' position and concede they are not entitled to coverage under this endorsement.[4]

Plaintiffs may have a valid claim only if the loss of livestock can be attributed to one of the enumerated perils contained in the basic policy, FO-6.

Plaintiffs have the burden to show that a peril insured against was the direct cause of the loss. *Marks v. Lumbermen's Insurance Co. of Philadelphia,* 160 Pa. Super. 66, 49 A.2d 855 (1946) (peril insured against must be proximate cause of insured's loss to recover on policy). Where clear language of the contract specifies the risk, only losses due to the risk insured against are compensable under the policy. *Cleland Simpson Co. v. Firemen's Insurance Co.,* 392 Pa. 67, 140 A.2d 41 (1958).

Plaintiffs argue that the windstorm peril provision, interpreted in conjunction with the provision dealing with the "disruption of power" under the general exclusions section, provides coverage for their loss.

The windstorm provision provides in pertinent part:

---

4. Defendants point to this endorsement, which appears to address the precise type of loss suffered by plaintiffs, as evidence that the basic policy does not provide coverage for the loss of the livestock in this case. However, the issue before the court at this point is only whether it can be said as a matter of law that, on the limited record presented, there can be no coverage for plaintiffs' loss under the basic policy.

"Perils Section—Coverages E, F, and G

" 'We' insure against direct physical loss to property covered under coverages E, F, and G caused by the following perils, unless the loss is excluded under the general exclusions: . . .

"(2) Windstorm or hail—However, 'we' do not pay for loss: . . .

"(c) to 'livestock' or poultry caused by:

"(1) running into streams or ditches or against fences or other objects;

"(2) smothering;

"(3) fright; or

"(4) freezing in blizzards or snowstorms; . . ." (Complaint, exhibit 6; answer, exhibit A (AAIS, FO-6, Ed. 1.0, p. 10).)

The windstorm peril would be applicable in this instance if the storm directly caused the physical loss of the livestock. The exclusion in the windstorm provision would not operate to preclude coverage since the loss did not occur as a result of any of these events.

The additional policy conditions and property coverage terms portion of the policy, FO-20, Ed. 1.0, contains general exclusions including one relating to the "disruption of power."

"Additional Policy Terms Applicable To All Property Coverages

"General Exclusions

" 'We' do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss

before, at the same time as, or after the excluded causes or events. . . .

"(8) Power disruption—'We' do not pay for loss which results from the disruption of power or other utility service, whether or not it is caused by a peril insured against, if the cause of the disruption is not on the 'insured premises.'

" 'We' do pay for direct loss by a peril insured against which occurs on the 'insured premises' as a result of the disruption of power." (Complaint, exhibit 5; answer, exhibit A (AAIS, FO-20, Ed. 1.0, pp. 2-3).)

Plaintiffs allege that the loss of the livestock was caused by a windstorm that knocked over a tree on the insured property which fell on the power line causing a disruption of electric power. The disruption of electric power rendered plaintiffs' ventilation system inoperable which in turn caused the livestock to suffer from hypothermia.

Whether the windstorm peril provision, read in light of the power disruption provision of the general exclusions, operates to bring plaintiffs' loss within the coverage provided by the policy depends on the interpretation of the clause: " 'We' do pay for direct loss by a peril insured against which occurs on the 'insured premises' as a result of the 'disruption of power'." Since this phrase is ambiguous, it is to be interpreted to mean that the insurer will pay for the loss of livestock as a result of the disruption of power on the insured premises if the loss is a direct loss by a windstorm. *Neuhard v. Travelers Insuance Co.,* 831 A.2d 602 (Pa. Super. 2003) (where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement).

Direct loss is not defined in the policy. However, there is guidance as to the meaning of this term in the decision of the Superior Court in *Marks v. Lumbermen's Insurance Co. of Philadelphia,* 160 Pa. Super. 66, 49 A.2d 855 (1946). In *Marks,* the Superior Court interpreted an insurance policy provision insuring the plaintiff against "direct loss and damage by windstorm" to mean that the risk insured against, a windstorm, was the proximate cause of the loss. The Superior Court stated that, while the peril insured against must be the proximate cause of the loss, it need not be the sole cause. *Id.* The plaintiff may recover even though a peril excluded from the policy may have remotely or incidentally contributed to the loss. *Id.* Plaintiffs, therefore, may be entitled to recover under the policy for the loss of livestock if the loss was proximately caused by a peril insured against, the windstorm.

Whether the loss was proximately caused by the windstorm presents a question of fact to be resolved at trial based upon all of the relevant evidence.[5] Accordingly, defendants' motion for judgment on the pleadings and plaintiffs' cross motion for judgment on the pleadings will be denied.

With respect to plaintiffs' bad faith claim, the current record is inadequate to permit the court to conclude, in light of the applicable law, that defendants have engaged in bad faith in addressing plaintiffs' underlying insurance claim. This issue too must await resolution at trial

---

5. Discovery may result in the disclosure of information which demonstrates that there is no genuine issue of fact which would have to be resolved at trial. If such is the case, this matter may be disposed of by means of a properly supported motion for summary judgment.

or by means of a properly supported motion for summary judgment.

For the reasons stated above, the court enters the following:

## ORDER

And now, June 13, 2005, upon consideration of defendants' motion for judgment on the pleadings and plaintiffs' cross motion for judgment on the pleadings, it is ordered that defendants' motion is denied and plaintiffs' cross motion is denied.